14 CV 4462

RECEIVED JUN 20 2014 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Power Authority of the State of New York,

                Plaintiffs,

           v.

The tug *M/V ELLEN S. BOUCHARD*, and the barge *B No. 280*,
their engines, apparel, tackle, boats, appurtenances, etc., *in rem*,
and Bouchard Transportation Co., Inc., Motor Tug Ellen S.
Bouchard, Inc., and B No. 280 Corp., *in personam*,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VERIFIED COMPLAINT

14 Civ. _____

Plaintiff, Power Authority of the State of New York ("NYPA"), by its attorneys, Holland & Knight LLP, files this Verified Complaint against defendant tug M/V ELLEN S. BOUCHARD, official No. 644590, (the "Tug"), and defendant tank vessel B. No. 280, official No. 1181626, (the "Barge"), their engines, tackle, boilers, appurtenances, etc., *in rem*, and defendants Bouchard Transportation Co., Inc. ("Bouchard"), Motor Tug Ellen S. Bouchard Inc., and B. No. 280 Corp., (the latter three entities collectively referred to as "Defendants"), *in personam*, and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an admiralty or maritime claim as provided in Rule 9(h) of the Federal Rules of Civil Procedure. This Honorable Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1333, 1367 and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2.    This action is also brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and FRCP 57.

3. Venue of this action is properly found in this Honorable Court pursuant to 28 U.S.C. §§1391(b)(2), 1391(d) and 112(b).

## The Parties

4. NYPA is a corporate municipal instrumentality of the State of New York created by the Legislature of the State by Chapter 772 of the laws of 1931, as amended and codified in Public Authorities Law §§ 1000-1017. NYPA is a body corporate and politic and a political subdivision of the State of New York, exercising essential governmental and public powers. NYPA's principal office is in Albany, New York.

5. NYPA brings this claim on its own behalf and as agent and trustee on behalf of and for the interest of all parties who are or may be or become interested in the subject matter hereof, as their respective interests may appear; NYPA is entitled to maintain this action.

6. Upon information and belief, the defendant Tug M/V ELLEN S. BOUCHARD is a 1982 built U.S. flag towing vessel with Official No. 644590, and is now or will be within this district during the pendency of this action.

7. Upon information and belief, the defendant Barge B. No. 280 is a 2006 built U.S. flag tank vessel with Official No. 1181626 greater than 3,000 gross tons, and is now or will be within this district during the pendency of this action.

8. For the matters set forth herein, NYPA has a maritime lien on the defendant Tug and the defendant Barge, their engines, apparel, tackle, appurtenances, etc., *in rem*.

9. Upon information and belief, the defendant Bouchard is a corporation organized and existing under the laws of the State of New York with a principal place of business at 58 South Service Road, Suite 150, Melville, New York 11747. At all material times, defendant Bouchard was the operator of the Tug and Barge.

10. Upon information and belief, the defendant Motor Tug Ellen S. Bouchard, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 58 South Service Road, Suite 150, Melville, New York 11747. At all material times, defendant Motor Tug Ellen S. Bouchard, Inc. was the owner of the Tug.

11. Upon information and belief, the defendant B. No. 280 Corp. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 58 South Service Road, Suite 150, Melville, New York 11747. At all material times, defendant B. No. 280 Corp. was the owner of the Barge.

## Background

12. At all material times, NYPA was the owner of four parallel, self-contained, dielectric fluid filled, 345,000 volt electrical transmission cables (Cables Nos. 1-4) buried beneath the Long Island Sound (the "Y-49 Cable System"). The Y-49 Cable System runs between a transition station located in the Town of North Hempstead, Nassau County, New York and a transition station in the City of New Rochelle, Westchester County, New York.

13. At all material times, the Y-49 Cable System was in active use and operation.

14. The Y-49 Cable System was and is prominently marked by the designation "Cable Area" on the relevant navigation charts which expressly caution mariners to use "extreme caution" when operating in the Cable Area.

15. The existence and location of the Y-49 Cable System was and is well known to all mariners or other users of the Long Island Sound, including, upon information and belief, the Defendants.

## Incident and Damage to the Y-49 Cable System

16.     Upon information and belief, the Tug is outfitted with an Intercon Coupler System which allows the bow of the Tug to be inserted into the concave stern of the Barge in a rigid and mechanically locked pushing configuration. When in this pushing configuration the Tug and Barge roll and heave in unison and the Tug and Barge operate and maneuver as a single vessel.

17.     Upon information and belief, on or about January 6, 2014 the Tug and Barge were operating on the Long Island Sound in proximity to the entrance to Hempstead Harbor, and the Tug and Barge deployed its anchor and anchor chain on top of, or dragged its anchor and anchor chain across and against, the Y-49 Cable System and, specifically, Cable No. 3, causing damage to Cable No. 3, and causing the release of dielectric fluid from Cable No. 3 into and upon the Long Island Sound.

18.     Cable Y-49 contains deielectric fluid as an insulant. The dielectric fluid in Cable No. 3 which was caused to be discharged into the water is a petroleum based oil that comes within the definition of "oil" and "petroleum," respectively, under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.* ("OPA"), specifically § 2701(23) and the New York Oil Spill Laws, N.Y. Nav. Law §§ 170 *et seq.* ("NY OSL"), specifically, § 172(15).

19.     The waters into which the dielectric fluid was released as a result of the incident herein are "navigable waters" of the United States in accordance with OPA, specifically, 33 U.S.C § 2701(21) and are "waters" in accordance with NY OSL, specifically, N.Y. Nav. Law § 172(18).

20. At the time of the incident herein, as a tug and tow combination, the Tug and the Barge constituted a "vessel" in accordance with OPA, specifically, § 2701(37) and NY OSL, specifically, N.Y. Nav. Law § 172(17).

21. The Y-49 Cable System is an "offshore facility" in accordance with OPA, specifically, 33 U.S.C. §§ 2701(9) and (22).

22. Concerning the incident herein, the discharge of dielectric fluid was caused by the acts and/or omissions of Defendants which resulted in NYPA becoming a "responsible party" under the provisions of OPA, specifically, 33 U.S.C. § 2701(32)(C) and a "person responsible" under the provisions of NY OSL, specifically, N.Y. Nav. Law § 181.

23. On January 6, 2014, at about 7:02 a.m., the feeder for the Y-49 Cable System tripped offline indicating that one or more of the cables in the Y-49 Cable System had faulted (the "Fault").

24. On January 6, 2014, NYPA notified the United States Coast Guard ("Coast Guard") (as well as other federal and state governmental agencies) of the oil spill from Cable No. 3 and the Y-49 Cable System Fault. The Coast Guard initiated an investigation into the cause of the incident.

25. On January 8, 2014, the Coast Guard advised NYPA that on January 6, 2014 at or around 7:00 a.m. a vessel had anchored in the vicinity of Hempstead Harbor and the cable area of the Y-49 Cable System. The Coast Guard provided NYPA with geographical coordinates where the vessel anchored. These coordinates matched with the impacted area of the Y-49 Cable System.

26. Following the incident, NYPA immediately implemented the Y-49 Cable System's Spill Protection Control and Countermeasure Plan and mobilized environmental

response contractors to respond to the discharge of dielectric fluid from Cable No. 3 into navigable waters. The Coast Guard and NYPA, along with the New York Department of Environmental Conservation, established an Incident Command to coordinate and direct environmental response and clean-up activities for the spill.

27.  Through the Incident Command, the Coast Guard issued an "Incident Action Plan" ("IAP") which directed NYPA to take actions to contain, prevent, minimize, mitigate or otherwise respond to the release of the dielectric fluid. The IAP was updated and reissued every two weeks during the environmental response operations.

28.  As directed by the Coast Guard pursuant to the IAP, and consistent with the National Contingency Plan, NYPA deployed oil containment booms to contain the dielectric fluid that was discharged into the water and to prevent it from impacting shoreline areas, deployed an oil skimming vessel and oil sorbent materials to clean up, minimize and/or mitigate the release of the dielectric fluid into the water, and further engaged marine support, survey, and commercial dive contractors to locate the damaged and leaking rupture of Cable No. 3 all in a sustained effort to minimize, mitigate and/or prevent further release of dielectric fluid into the water.

29.  As directed by the Coast Guard pursuant to the IAP, and consistent with the National Contingency Plan, NYPA emergency response crews worked together with the marine environmental response contractors to identify the exact location of the Fault and physical damage to Cable No. 3. Commercial divers excavated the impacted section of Cable No. 3 from the seabed. Marine surveyors used side scan sonar technology to image the seabed area around the Y-49 Cable System to search for indications of an anchor strike or some other impact to Cable No. 3.

30. The result of side scan sonar imaging reflected anchor and anchor chain drag markings on the seabed over and across the Y-49 Cable System (specifically, Cable No. 3) in a location near the entrance of Hempstead Harbor and in close proximity to the geographical coordinates the Coast Guard had provided to NYPA.

31. On or about January 14, 2014, NYPA received a telephone call from a representative of Bouchard. The individual identified the tug ELLEN S. BOUCHARD and the barge B. No. 280 as the vessels that were anchored in the vicinity of the Y-49 Cable System when the Fault occurred.

32. As directed by the Coast Guard pursuant to the IAP, and consistent with the National Contingency Plan, NYPA engaged a crane barge, a submarine cable repair contractor, and commercial divers to cut and cap the severed ends of Cable No. 3 to prevent the further discharge of dielectric fluid into the water. This process involved excavating a large section of Cable No. 3 so that the damaged section could be raised to the surface as part of the cut and cap operation.

33. By on or about February 27, 2014, the damaged section of the Cable No. 3 had been cut out and the severed ends of the Cable capped and returned to the seafloor. There has been no further discharge of dielectric fluid into the waters of the Long Island Sound. After the Cable No. 3 was successfully cut and capped, the Coast Guard authorized NYPA to demobilize the environmental response.

34. Permanent repair operations are currently underway in order to return Cable No. 3 to service. The permanent repairs are expected to be completed by July 2014.

35. The impact to Cable No. 3 and discharge of dielectric fluid into navigable waters was caused by the actions and/or omissions of Defendants including without limitation

7

negligence, gross negligence, reckless, careless, willful or wanton conduct of the Defendants in the ownership, methods and operations of the Tug and Barge, and of the masters, officers, and crews, and their servants, agents, employees, contractors and consultants, and the unseaworthiness of the Tug and Barge.

36. The Y-49 Cable System did not in any way obstruct or interfere with navigation, and was lawfully placed and existing in accordance with and pursuant to the terms of permits issued for that purpose by the appropriate authorities.

## NYPA's Environmental Response Damages

37. As a result of the impact to Cable No. 3 and the discharge of dielectric fluid caused by the Defendants, NYPA has incurred emergency environmental response expenses and removal costs. The emergency response expenses and removal costs incurred by NYPA include the costs associated with: setting and maintaining oil containment booms to contain the discharged dielectric fluid and to protect nearby environmentally sensitive shoreline areas from the incursion of the discharged oil; oil skimming operations and the setting and maintaining of oil sorbent materials to remove the discharged oil from the water; marine support and dive operations to locate and contain the leak; operations to cut and cap Cable No. 3 in order to prevent the further discharge of dielectric fluid into the water; and other costs incurred related to containing, cleaning up, assessing, mitigating, disposing of material and preventing the discharge of oil from Cable No. 3 into the water.

38. NYPA has or will incur damages from third parties asserting claims for damage to real or personal property, injury to natural resources, loss of revenue or income, loss of profits or impairment of earning capacity, and other damages resulting from the release of dielectric fluid into the navigable waters of the United States and the waters of the State of New York.

39. NYPA's environmental response costs, removal costs, and damages resulting from the oil spill were caused by the Defendants' actions and/or omissions including without limitation negligence, lack of due care, the unseaworthiness of the Tug and Barge, and reckless and grossly negligent and/or willful or wanton conduct resulting in substantial monetary damages in an amount so near as can now be estimated to exceed $10,000,000.00 dollars.

### COUNT I

### Declaratory Relief

40. NYPA refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 through 39 of this complaint.

41. The discharge of dielectric fluid from Cable No. 3 was caused solely by the acts and/or omissions of the Defendants.

42. NYPA exercised due care in with respect to the dielectric fluid and took reasonable precautions against foreseeable acts or omissions that could cause the discharge of dielectric fluid into the water from Cable No. 3 by lawfully placing and burying Cable No. 3 in accordance with and pursuant to the terms of permits issued for that purpose by the appropriate authorities, and by ensuring that the area in which Cable No. 3 was laid was properly identified on the appropriate navigation charts.

43. As such, pursuant to 33 U.S.C. § 2703(a)(3), NYPA is entitled to a complete defense from any and all liability under OPA for the above described discharge of oil from Cable No. 3.

44. Moreover, pursuant to 33 U.S.C. § 2702(d), Defendants are strictly liable for all of NYPA's removal costs and damages resulting from the oil spill.

9

45.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and OPA, 33 U.S.C. § 2717(f)(2), NYPA is entitled to, and hereby seeks, a declaratory judgment that is binding in this action and any subsequent action or actions against Defendants, Tug and Barge.

## COUNT II

### Subrogation Claim under OPA

46.     NYPA refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 through 45 of this complaint.

47.     As a result the discharge of oil from Cable No. 3, NYPA suffered, and will continue to suffer, removal costs and damages, including the potential settlement of damages claims by injured third parties, in an amount in excess of $10,000,000.00.

48.     Pursuant to 33 U.S.C. § 2702(d), the Defendants shall be treated as the responsible parties for the purpose of determining liability under OPA for the discharge of dielectric fluid from Cable No. 3, and Defendants are strictly liable for all of NYPA's removal costs and damages resulting from the spill.

## COUNT III

### Contribution Claim under OPA

49.     NYPA refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 through 48 of this complaint.

50.     Defendants and the Tug and Barge are liable for NYPA's removal costs and damages under OPA and under principles of contributory and/or comparative negligence under the general maritime law or applicable state law.

51.     Pursuant to 33 U.S.C. § 2709, NYPA is entitled to contribution from the Defendants in an amount in excess of $10,000,000.00 for its removal costs and damages resulting from the discharge of dielectric fluid from Cable No. 3.

## COUNT IV

### Strict Liability Claim under the NY OSL

52.     NYPA refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 through 51 of this complaint.

53.     Pursuant to N.Y. Nav. Law § 181, Defendants are directly and strictly liable to NYPA for all cleanup, removal costs, and damages resulting from the discharge of dielectric fluid into the water from Cable No. 3, and Defendants are strictly liable for all of NYPA's removal costs and damages, in an amount in excess of $10,000,000.00, resulting from the spill.

## COUNT V

### Contribution Claim under NY OSL

54.     NYPA refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 through 53 of this complaint.

55.     Pursuant to N.Y. Nav. Law § 176(8), NYPA is entitled to contribution from the Defendants in an amount in excess of $10,000,000.00 for its removal costs and damages resulting from the discharge of dielectric fluid from Cable No. 3.

WHEREFORE, Plaintiff demands:

1. That a warrant be issued for the arrest of the defendant Tug M/V ELLEN S. BOUCHARD *in rem;*

2. That a warrant be issued for the arrest of the defendant Barge B No. 280 *in rem;*

3. That a judgment in condemnation and sale be entered against the defendant Tug ELLEN S. BOUCHARD and the defendant Barge B No. 280 in the amount of any judgment recovered by the plaintiffs, with costs and interest to be paid out of the proceeds thereof;

4. That NYPA be granted a declaratory judgment that the discharge of oil from Cable No. 3 was caused solely by the acts or omissions of the Defendants and that NYPA is entitled to a complete third-party defense under OPA and recovery of all removal costs and damages resulting from the oil discharge or to third parties under OPA pursuant to 33 U.S.C. § 2717(f)(2);

5. That judgment be entered against Defendants for all of NYPA's removal costs and damages in accordance with OPA including 33 U.S.C. §§ 2702(d) and 2709;

6. That judgment be entered against Defendants for all of NYPA's removal costs and damages in accordance with N.Y. Nav. Law §§ 181 and 176(8);

7. That any judgment entered against Defendants be binding in any subsequent action or actions to recover third-party removal costs and/or third-party damage claims; and,

8. That NYPA be awarded the legal fees and expenses incurred in bringing and maintaining this action.

9. That this Honorable Court grant such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
       June 19, 2014

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
James H. Hohenstein
Vincent J. Foley
F. Robert Denig
31 West 52nd Street
New York, New York 10019
Tel: (212) 513-3200
Email:  jim.hohenstein@hklaw.com
        vincent.foley@hklaw.com
        robert.denig@hklaw.com

*Attorneys for Plaintiff, Power Authority of the State of New York*

## VERIFICATION

STATE OF NEW YORK            )
                             )  ss.:
COUNTY OF WESTCHESTER        )

Bradford H. Van Auken, being duly sworn, deposes and says:

1. I am Senior Vice-President, Operations Support Services and Chief Engineer, Power Authority of the State of New York ("NYPA").

2. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to my knowledge, except as to these matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

3. The source of my information is my personal knowledge as well as my review of NYPA's records or documents on file.

_____
Bradford H. Van Auken
Senior Vice-President,
Operations Support Services
and Chief Engineer,
Power Authority of the State of New York

Sworn to before me this
19 day of June, 2014

_____
Notary Public

MARINA FELDMAN
Notary Public, State of New York
No. 01FE6113819
Qualified in Westchester County
Commission Expires August 02, 20 16

#30398848_v3